259 So.2d 871

**STATE of Louisiana**

v.

**Robert WILKERSON et al.**

**No. 51258.**

March 27, 1972.

---

---

Gerald P. Aurillo, New Orleans, for defendant-appellant.

. Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Jim Garrison,. Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.

SUMMERS, Justice.

Appellant, charged by bill of information with armed robbery of one Loraine Jemison on February 18, 1970, was tried, convicted and sentenced to serve 35 years at hard labor in the State Penitentiary. Six bills of exceptions were reserved and are asserted on this appeal to set aside the conviction and sentence.

### Bill No. 1

Relying upon Article 703 of the Code of Criminal Procedure and our decision in State v. Allen, 251 La. 237, 203 So.2d 705 (1967), defense counsel filed a motion on May 15, 1970 to suppress any testimony identifying the accused, alleging that the evidence of identification the prosecution would present was tainted by the lineup

conducted prior to trial on February 28, 1970.

It is alleged that the identification of the accused at the lineup was without benefit of counsel and there was no knowing waiver of counsel; the procedure was unnecessarily suggestive and conducive to irreparable mistaken identification; and the lineup identification was the product of a detention of the accused without warrant or probable cause. These irregularities in the lineup identification are alleged to violate the constitutional rights of the accused, tainting with unconstitutionality the evidence of identification to be introduced at the trial by the prosecution.

By answer the State denied the allegations of the motion alleging that all evidence in the posssession of the State was obtained by the use of all substantive and procedural safeguards to which the accused is entitled.

Pursuant to prior fixing, the motion to suppress was tried on May 20, 1970 before trial. After hearing evidence, the motion was denied and this bill was reserved. The case proceeded to trial.

Before reviewing the trial court ruling on this motion to suppress, it is appropriate to comment upon this use of the motion, for the State has raised the issue and because Article 703 of the Code of Criminal Procedure does not authorize use

of this motion to suppress verbal testimony alleged to be tainted by a lineup conducted in violation of the constitutional rights of the accused. Article 703 authorizes the use of the motion to suppress "any tangible objects or other property, or documents, books, papers or other writings" obtained as a result of "an unconstitutional search or seizure," or "a written confession or written inculpatory statement" on "any ground that would make it inadmissible in evidence."

Aside from our implied approval of the use of the motion to suppress in cases not involving search and seizure or written confessions in State v. Pierre, 261 La. 42, 259 So.2d 6, decided February 21, 1972; State v. Jackson, 259 La. 957, 254 So.2d 259 (1971) and State v. Allen, 251 La. 237, 203 So.2d 705 (1967); and the decisions in State v. Davidson, 248 La. 161, 177 So.2d 273 (1965) and State v. Rasheed, 248 La. 309, 178 So.2d 261 (1965), where the motion to suppress evidence obtained as a result of an alleged unconstitutional search and seizure was approved even prior to any statutory authority on the subject; we believe the use of the motion to suppress in this case is "consistent with the spirit of the provisions of this Code" (La.Code Crim.Proc. art. 3) and should be permitted in keeping with the procedural guidelines set forth in Article 703, subd. B and 703, subd. C of the Code of Criminal Procedure. The procedural guidelines

applied to written confessions and inculpatory statements can readily be applied to evidence of identity growing out of a lineup.

The widespread practice of utilizing the motion to suppress testimony tainted by a pretrial lineup identification has emerged in our jurisprudence unopposed until this time. Although a literal reading of Article 703 of the Code of Criminal Procedure would seem to confine that motion to search and seizure evidence and evidence of written confessions and inculpatory statements, the motion is well attuned to the relief sought in this case, we have sanctioned it, and Article 3 of the Code provides authorization for the position we have taken. We find it more difficult to retreat from the position we have assumed than we do to continue on this acceptable path.

■ In reviewing the record made on the motion to suppress, no testimony was elicited or other evidence produced to support any of the various claims of unconstitutionality advanced by defendant. At the time of his arrest the accused was read a document entitled "Waiver", in which all of his rights pertaining to a pretrial lineup were set out, including his right to court appointed counsel. He voluntarily signed this waiver. He was offered court appointed counsel which he refused.

■ Loraine Jemison, the victim, picked the accused out of the lineup and identified

him as one of the robbers. Isiah Smith was also in the lineup, a suspect at the time. He was represented by Galin Brown, an attorney at law. In Brown's opinion the lineup was fair and he observed the proceedings carefully. He said no undue suggestion or influence was used to induce Loraine Jemison to identify the accused.

The accused took the stand at this hearing and stated his only objection to the lineup was that the other prisoners selected by the authorities to appear with him were not sufficiently similar in coloring or size. A photograph of the six prisoners who composed the lineup is in the record. It reveals they are all of approximately the same age, color and size; all were dressed in prison garb of striking similarity.

■ The contention that the accused was illegally detained without warrant or probable cause is answered by the evidence of probable cause for his arrest. Soon after the robbery, police officers offered Loraine Jemison nine "mug shots" of former offenders, a photograph of the accused being included. Without suggestion or influence she went through them and selected the photograph of the accused, stating that she thought he was the robber who held the gun on her. She said, however, she could not be positive at the time. Later, when the lineup was held she made a positive identification.

On the basis of the tentative identification made from the "mug shots" police officers arrested the accused at his residence and seized a .22 calibre pistol which was laying on his bed nearby.

Identification of the accused by the victim from the "mug shots" and the fact that a robbery had in fact been perpetrated prior thereto were sufficient in our view to support a finding of probable cause.

### Bill No. 2

During trial the Assistant District Attorney was questioning Officer James Eaton on direct examination. Eaton testified that the accused was taken out of the parish prison and placed in a lineup. When asked what occurred, Eaton said: "Well, we had him put on a blue House of Detention uniform. An attorney was present at the lineup, Loraine Jemison was present with her father, and she identified Wilkerson." Defense counsel objected to what Loraine Jemison said as hearsay, his objection was overruled and this bill was reserved.

■■ Hearsay evidence is testimony a witness offers in court which is not based on his own knowledge, but is merely a repetition of what he has been told, and which is offered as proof of the truth of the matter he is repeating. See 1 Whar-

ton's Criminal Evidence § 249 (12th ed. 1955). With rare exceptions, a witness can testify only to facts within his knowledge. He may not testify as to any recital of facts heard by him or to any impression he may have. La.R.S. 15:463.

■ Here, however, the act of identification whether accomplished by the spoken word, by gesture, or both, took place in the presence of the officer who stated that the accused was identified by the victim at the lineup. Officer Eaton witnessed the act of identification, he heard and saw the entire series of events which constituted the identification.

The trial judge's per curiam sets the matter at rest:

The witness, Miss Jemison, had previously testified that she had tentatively identified the defendant's photograph from a group of photos and had positively identified him as the number five subject in the lineup and had positively identified him in court. There was no substantial attack on her credibility and she was a very convincing witness.

If the admission of the testimony of the officer that she had made an identification was error because of hearsay, then I suggest that it was harmless error not resulting in a miscarriage of justice or prejudicial to the defendant, nor sufficient to warrant a reversal.

See State v. Oliver, 174 So.2d 509 and 247 La. 729, Criminal Code of Procedure Art. 921.

The bill is without merit.

*Bill No. 3*

This bill was reserved when, over objection by counsel for the accused, the trial judge permitted the State to introduce the gun found on a bed nearby when the accused was arrested at his residence, and, also a Rights of Arrestee form, this being a detailed recitation of the Miranda warnings and a reference to other rights which the accused did not sign, but which was read to him by a police officer.

The objection to the introduction of the gun was twofold; first that it was obtained as a result of a search and seizure conducted without a warrant; and, secondly, no chain of custody or proper identification of the weapon as the one used in the robbery was established as a predicate to its introduction.

■ In answer to the first phase of the objection, no motion to suppress was filed to exclude the introduction of the gun as a product of an unconstitutional search and seizure as required by Article 703 of the Code of Criminal Procedure, and there is no claim that the defense was surprised by the tender of the gun in evidence. Moreover, as this opinion shows in connection with another bill, this seizure of the gun

was made in connection with the arrest of the accused on probable cause, the gun being in plain view on a bed nearby at the time of the arrest.

■ As to the objection that a proper chain of custody was not established, it is noted that the officers who seized the gun inscribed their initials and the date of seizure on the gun at the time. They identified these markings at the trial. The victim testified that the gun looked like the gun used in the robbery. There is sufficient evidence here to permit the introduction of the gun, the weight of the evidence being a question for the jury.

■ The Rights of Arrestee form was relevant to a disclosure that the officers advised the accused of his rights by reading the Miranda warnings to him as they were required to do.

This bill lacks merit.

### Bills Nos. 4, 5 and 6

These three bills were reserved during the State's closing argument to the jury.

Bill 4 objects to the argument that "if Wilkerson was booked and arrested before Jones was charged and arrested, since Wilkerson was in jail there was no possibility that Wilkerson could threaten Jones at all."

Bill 5 takes exception to the following argument by the prosecutor:

I submit to you gentlemen that somebody is lying. Either Robert Wilkerson was at Total Community Action looking for a job all day or Robert Wilkerson was pulling the armed robbery; one or the other, he couldn't have been in both places. He had to be one place or the other. Now, what does that mean? That means you have Loraine Jemison on one hand saying he was pulling the armed robbery, and on the other hand, you have Isiah Smith saying, no, he was with me. Now, if that were the case, you would have a one on one situation and there is a very good possibility that you might decide that this is reasonable doubt, one against one, but I charge you, I ask you, gentlemen, to look at the surrounding circumstances to see which of these witnesses is lying because one of them has to be lying.

Bill 6 was reserved to the following remarks by the assistant district attorney:

I ask you that, in determining who is mistaken or lying here, you have to look and see what the other circumstances are. This is only one fact. Was he there or was he not there? But, look at the other circumstances of the testimony of other witnesses and other testimony of these two witnesses, and make a determination who was mistaken or who was lying. Now, I think that from the testimony that you have heard from the stand today that you would have to form

a conclusion that Isiah Smith and Wortham Jones are lying in this matter. They are not telling the truth. Why? I don't know. I offered some things to you gentlemen to consider. I was probing, looking to try and find out exactly why. I can't determine why. I don't know why but I do know that they were lying. Now, there was some contention as to why . . . .

■ Under Article 774 of the Code of Criminal Procedure the argument shall be confined to evidence submitted, to the lack of evidence, to conclusions of fact that the State or defendant may draw therefrom, and to the law applicable to the case. All of the arguments are conclusions of fact that the prosecuting attorney could properly draw from the evidence submitted during the trial.

It is relevant to note that during the closing argument the trial judge instructed the jury on two separate occasions that it was the jury's responsibility to determine the credibility of the witnesses and that in their closing arguments counsel for the State and the accused were only expressing their personal opinions of what the evidence showed.

These bills are without merit.

For the reasons assigned, the conviction and sentence are affirmed.

BARHAM, J., concurs.