344 So.2d 659 (1976)
STATE of Louisiana
v.
Billy Ray JACOBS.
No. 57629.
Supreme Court of Louisiana.
September 13, 1976.
Dissenting Opinion April 6, 1977.
*660 Charles S. Smith, Hayes, Harkey, Smith & Cascio, Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., James A. Norris, Jr., Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
In May of 1975, two men broke into the home of Mary Davis in Monroe, Louisiana, beat Mrs. Davis, an elderly woman, and robbed her of twenty dollars, several items of jewelry, a radio, and a gun. None of the stolen property was ever recovered, but police arrested Charles Overton and Billy Ray Jacobs for committing the aggravated burglary, a violation of La.R.S. 14:60. The state severed the trials of the two defendants, and defendant Jacobs, whose appeal is now before the Court, was found guilty as charged and was sentenced to serve twenty years at hard labor. In his appeal of that conviction and sentence, defendant Jacobs argues that there were five errors made at his trial which require this Court to reverse his conviction and to order him retried for the offense. Because we agree with the defendant that a trial error was committed which demands reversal of his conviction and sentence, we shall discuss only that issue, which he has assigned as error number three.
Assignment of error number three involves the introduction of hearsay evidence. It arose in this manner. Mrs. Davis, the victim of the crime, testified for the state but failed to positively identify defendant Jacobs as one of the men who beat and robbed her, although she did state several times that Jacobs "looked very much like" the perpetrator. She was not asked whether she had ever previously identified the accused, or whether she had ever been asked to identify him at a pre-trial photographic showup. Subsequent to her testimony, the state attempted to introduce evidence that Mrs. Davis had, in fact, chosen Jacobs' picture from a group of five photographs shown to her several weeks after the crime, and had identified Jacobs as one of her attackers. Andrew Milstead, a member of the Monroe Police Department, was asked about the photographs he had shown Mrs. Davis and he replied:
"The defendant's picture at this time was numbered number two (2), and she looked at the picture very carefully at this time. When she got to picture number two (2), she indicated and pointed out Mr. Smith: I'm going to object to hearsay, Your Honor.
* * * * * *
"Q. And would you describe how she examined them?
A. Yes sir. She looked at the photographs and she examined them, number one, and she moved to the number two picture and she looked at it and examined it, and at this time she pointed out that this was definitely one of the subjects
Mr. Smith: I'm going to object to hearsay. The detective is expressing his opinion and he is also possibly stating comment she made, now.
The Court: Sustained.
* * * * * *
"A. Detective Milstead, did Mrs. Davis point out any particular photograph as being significant?
Q. Yes sir, she pointed out photograph number two, the defendant, as definitely being one of the suspects.
Mr. Smith: I'm going to object again, Your Honor. This `definitely', that is hearsay.
Mr. Norris: Your Honor, the fact that Mrs. DavisMrs. Davis, now I grant it, you can testify to a fact. He saw Mrs. Davis pick a certain photograph, but he can't testify
The Court: Sustained."
The jury was removed and the trial judge explained that, while the state was entitled to introduce evidence that Mrs. Davis picked out a particular picture, it was not entitled to editorialize that she "definitely" chose the accused's picture. When the jury was returned to the courtroom, the trial judge, on request of defense attorney, admonished *661 the jury members to disregard the word "definitely" in the witness' testimony. When asked again to describe what Mrs. Davis did while examining the photographs, Detective Milstead stated:
"[S]he examined [picture number two], she looked at it closely, and she pointed to the picture at this time and stated that this
Mr. Smith: I'm going to object.
The Court: Overruled.
A. And stated that this was one of the subjects in picture number twoto us, that this was one of the subjects."
The issues raised by the preceding testimony and rulings are two: first, was it error for the judge to allow the policeman to testify as to the conduct of a third party (Mrs. Davis) in selecting a particular picture; and second, was it error to allow the policeman to testify as to the statement of a third party?
We have recently dealt with the hearsay issue in State v. Ford, 336 So.2d 817 (La.1976), where we held that the testimony of a police officer describing the conduct of a witness who identified a defendant is inadmissible because it is assertive hearsay.[1] In that case the admission of the hearsay evidence was found not to be reversible error because it merely corroborated the witness' own prior direct testimony that he had indeed previously identified defendant as the perpetrator. Under the Ford rationale, the policeman's testimony as to Mrs. Davis' conduct in choosing defendant Jacobs' picture was inadmissible assertive hearsay because the witness was testifying as to the out-of-court communication of a third person and the third person, Mrs. Davis, had not testified that she had made a pre-trial identification of the accused. However, this error was neither briefed nor assigned and was, in fact, specifically waived by defense counsel at trial. The error, therefore, is not before this Court, and we turn to the second type of hearsay admitted at the trialDetective Milstead's testimony that Mrs. Davis had "stated that this was one of the subjects in picture number two."
Hearsay evidence is an out-of-court statement made by a third party who made the statement while he was not under oath and not subject to cross-examination. McCormick, Law of Evidence 225 at 449 (Hornbook ed. 1954); II Wharton's Criminal Evidence 265, at 3 (13th ed. 1972) [hereinafter Wharton's]; 21 Loy.L.Rev. 279 (1975). The validity of hearsay evidence rests in part on the truthfulness of the third person. Hearsay evidence is excluded from trials because the safeguards which tend to insure that a person speaks truthfully and on the basis of his own knowledge are lacking: the third person was not under oath when he made the statement; there was no opportunity to cross-examine him at the time he made the statement; and the jury cannot observe his demeanor so as to judge his credibility. Wharton's, id. See generally, Edmund M. Morgan, Hearsay Dangers and the Application of the Hearsay Concept, 62 Harv.L.Rev. 177 (1948). Moreover, there is a chance that the witness is consciously or unconsciously misrepresenting what he was told by the third person. Wharton's id. at 6. For these reasons, hearsay evidence is inadmissible in Louisiana criminal trials unless otherwise provided by law. R.S. 15:434.
The evidence at issue in this case is undisputably hearsay. Detective Milstead (the witness) testified that Mrs. Davis (the third party) stated that picture number two was a photograph of her attacker. Mrs. Davis' statement was not made under oath nor while she was subject to cross-examination. It was presented to the jury to prove the truth of the matter asserted, i. e., that it was the accused who attacked Mrs. Davis. The officer's testimony went far beyond Mrs. Davis' testimony because she did not definitely identify Jacobs at the trial and *662 was not even asked about a pre-trial photographic identification. It was only through the testimony of the police officers that the state attempted to establish that Mrs. Davis had previously identified Jacobs as the man who had beaten her. Detective Milstead's testimony injected new evidence into the trial; it did not merely repeat what had already been established.[2]
We have previously held that when hearsay identification testimony is admitted into evidence, we will not find the error reversible if the witness' testimony repeated the third party identifier's own testimony that he had made a pre-trial identification.[3]State v. Ford, supra; State v. Smith, 285 So.2d 240 (La.1973); State v. Vassel, 285 So.2d 221 (La.1973); State v. Wilkerson, 261 La. 342, 259 So.2d 871 (1972); State v. Maiden, 258 La. 417, 246 So.2d 810 (1971). However, when this Court has reviewed an officer's testimony which related that the accused had been identified as the guilty party by a third person and the officer's testimony was introduced as substantive evidence (not corroboration) of that fact, we have consistently reversed the conviction. State v. Murphy, 309 So.2d 134 (1975) (noted with approval at 36 La.L.Rev. 673 [1976]); State v. Hayden, 243 La. 793, 147 So.2d 392 (1962); State v. Kimble, 214 La. 58, 36 So.2d 637 (1948); State v. Garon, 158 La. 1014, 105 So. 47 (1925); State v. Cole, 145 La. 900, 83 So. 184 (1919). Moreover, we have held that a trial judge's refusal to admit an unsworn out-of-court statement made by a witness who had already testified was correct because that evidence was inadmissible. State v. Hamilton, 302 So.2d 267 (La.1974); see State v. Nero, 319 So.2d 303, 310 (La.1975). Our jurisprudence is consistent with that of the overwhelming number of states which likewise disallows the testimony of a witness who states that a third person has identified the accused as the perpetrator of the crime, especially if there has been no previous testimony about that pre-trial identification.[4] We hold, therefore, that the state may not bolster its case with an inadmissible extrajudicial identification when the identifier has not testified that she made such a pre-trial identification.
It has been suggested that this rule should not be applied in a case such as the present where the identifying witness could have been recalled by the accused for cross-examination about the pre-trial identification procedure.[5] We can find no reason for such an exception. Mrs. Davis was at the trial as a witness for the state. It was the state, not the defendant, which wanted to present evidence to the jury of her previous identification of defendant Jacobs. It was the state which was charged with presenting its evidence through the legally acceptable vehicle, the witness herself, instead of *663 choosing to replace her live testimony with the hearsay testimony of other persons.
Our procedure does allow the state to introduce in transcript form the previous testimony of a witness who is unavailable at trial, because the testimony is inherently trustworthy (it was initially given while the speaker was under oath and subject to cross-examination) and is especially needed. C.Cr.P. art. 295; McCormick, supra at § 231. When the witness who has testified at a preliminary hearing is unavailable at the trial because of death or other acceptable reason, then an extrajudicial identification which was part of that previous testimony could be admitted into evidence, but when the witness is available, then there is no need to introduce the evidence in the form of hearsay testimony. In that case the element of necessity upon which exceptions to the hearsay rule are usually founded is lacking. Martin A. Dyer, Extrajudicial Identification, 19 Md.L. Rev. 201 (1959). When the witness is available at trial, as Mrs. Davis was at defendant's trial, there was no necessity for having her extrajudicial identification of defendant introduced in hearsay form. The state has chosen to ignore its own available witness who could presumably have related her own extrajudicial identification, and has presented the identification through hearsay testimony. It has therefore chosen to inject into the trial hearsay testimony with its lack of safeguards and possibility of unreliabilityin a situation in which the problem of hearsay need not ever have arisen. Whether the state's action was a purposeful choice or mere neglect to question Mrs. Davis carefully, the state cannot now be heard to ask this Court to fashion a new exception to the hearsay rule which would allow hearsay testimony to be introduced in place of the testimony of its own available witness. The notion that the accused bore the burden of recalling Mrs. Davis so as to either dispute the state's hearsay evidence or to corroborate it assumes that this Court is willing to shift the burden of calling an available witness, to the defendant, so that he must cure the hearsay error by a risky questioning of the witness. We do not recognize such an exception to the hearsay rule.
Moreover, we cannot agree with the state's position that the admission of the hearsay identification in the absence of the identifying witness was harmless error. Mrs. Davis' identification was the crux of the state's case against Billy Jacobs, and she failed to positively identify him in court. The ingredient necessary to convince the jury that defendant Jacobs should have been convicted may well have been the testimony of Detective Milstead as to Mrs. Davis' out-of-court identification of him.
Therefore, for the reasons assigned, we reverse defendant's conviction and sentence, and remand the case to the trial court for re-trial.
DIXON, J., concurs, but is of the opinion that when it becomes a disputed issue that a witness did or did not identify a picture as a defendant, evidence of what the witness said may become a verbal act and as such admissible.
DENNIS, J., dissents and will assign reasons.
DENNIS, Justice, dissenting.
As I read the majority opinion in this case it formulates an inflexible rule that whenever a witness relates the fact of another's extrajudicial identification of the accused as the offender, reversible error will have been committed unless the other party has also testified as to the fact of his extrajudicial identification or has positively identified the offender at trial. The cases cited by the majority do not, in my view, support the formulation of such a mechanical and technical rule.
State v. Murphy, 309 So.2d 134 (La.1975), involved a police officer's testimony as to the substance of an informer's tip which led to the accused's arrest. This Court held that the officer's testimony relating what the informer told him was hearsay, and was improperly admitted. However, in Murphy, the informant did not appear to have been a *664 witness at trial, and was apparently unidentified and unavailable for cross-examination by the accused. Thus, Murphy clearly presents a different question than that posed by the present case, where the victim was a witness at trial and was readily available to the defendant for cross-examination. In deciding Murphy this Court was clearly influenced by the informant's apparent unavailability for cross-examination. We therein observed,
"In the instant case there was no opportunity for the defendant to cross-examine the informer who had identified him as the perpetrator of the crime. Absent circumstances justifying or mitigating this departure from defendant's constitutional right of confrontation, we have held this violation to be reversible error. * * *." 309 So.2d at 136.
State v. Hayden, 243 La. 793, 147 So.2d 392 (1962), involved testimony by a deputy sheriff that other officers, in the presence of the defendant, told him that certain physical evidence which was admitted at trial had been taken from the accused. This Court held that the defendant's custodial silence was not a tacit admission that the evidence was taken from him, and that the evidence was admitted without sufficient foundation. Defendant's conviction was therefore reversed. Hayden is distinguishable on its facts from the present case. The officers whose hearsay statements were related by the testifying deputy were not witnesses at the defendant's trial, and were not readily available to the accused for cross-examination.
In State v. Kimble, 214 La. 58, 36 So.2d 637 (1948), we held it was reversible error to allow officers to testify as to the substance of prior complaints by unnamed persons that the defendant was violating state liquor laws. The unnamed complainants were not witnesses at trial, and were not available to be cross-examined by the defendant.
Likewise, State v. Garon, 158 La. 1014, 105 So. 47 (1925), is readily distinguishable from the present case. In Garon a police officer was asked whether a witness had previously identified the defendant as the perpetrator of the crime charged. The officer answered affirmatively. This Court held that the officer's answer was hearsay, and that reversible error was committed by admitting it. However, a careful reading of this Court's opinion reveals that the testifying officer was not present at the time the other party made the identification which the officer's testimony related. Given that fact, this Court reached the conclusion that the officer could not testify properly as to the other party's identification of the accused. In the instant case the testimony objected to was given by the officer who conducted the photographic showing; he was relating his own observation of the witness' identification, not, as in Garon, what the witness (or some other person) told him about the witness' extrajudicial identification.
This Court held in State v. Cole, 145 La. 900, 83 So. 184 (1919), that the res gestae of an offense is limited to the time frame immediately surrounding the offense. Testimony given by the prosecutrix's mother in a rape prosecution relating statements made by her daughter two or three days after the crime were not admissible as part of the res gestae. Cole did not involve an extrajudicial identification of the defendant as the offender. The objectional evidence was apparently not offered to corroborate any identification by the victim of the accused.
I cannot agree with the position taken by the majority that the officer's testimony in the present case relating to Mrs. Davis' prior extrajudicial identification of the defendant was not offered to corroborate "direct testimony of a trial witness which identifie[d] the accused" as the offender. At trial, on direct and cross-examination, Mrs. Davis testified that the defendant looked like one of the offenders. Admittedly her in-court identification was not positive. She remembered her assailant as somewhat heavier than the defendant, as he appeared at trial. Other testimony offered by the State showed the defendant had lost a substantial amount of weight during the interim *665 between the offense and the date of trial. This change in the defendant's appearance may explain Mrs. Davis' reluctance to identify him positively at trial.
In my view evidence of Mrs. Davis' extrajudicial photographic identification of the accused clearly corroborated her in-court identification. The photographic identification took place in closer proximity to the alleged criminal act than did the trial identification.
"A reason frequently assigned for the admission of evidence as to a prior identification of the accused is that it is ordinarily more reliable than an identification at the trial, its closer relation to the criminal act in point of time affording less opportunity for deterioration or fading of the identifier's impressions or recollection and for changes in the appearance of the accused or guilty party, and thus enabling the identifier to be more certain or positive as to the identification. * *" Annotation, Admissibility of Evidence as to Extrajudicial Identification, 71 A.L. R.2d 449, 454 (1960).
In State v. Ford, 336 So.2d 817 (La.1976), this Court held harmless the introduction of evidence corroborating a transcript of a deceased witness' preliminary examination testimony describing his extrajudicial identification of the defendant. In Ford the deceased witness who made the identification was unavailable for cross-examination at trial, yet we allowed evidence of an extrajudicial identification corroborating his preliminary hearing testimony that the accused committed the crime. In the present case the witness whose extrajudicial identification was introduced was present at trial, and readily subject to cross-examination.
In State v. Ford, supra, we observed,
"* * * while some jurisdictions still hold that testimony as to an out-of-court visual identification made by another in the witness's presence is inadmissible hearsay under almost all circumstances, by far the greater number of jurisdictions now permit admission of such testimony, at least when offered in corroboration of direct testimony of a trial witness which identifies the accused. See: Annotation, Admissibility of Evidence as to Extrajudicial Identification, 71 ALR2d 449 (1960), and especially Later Case Service (through 1976); 1 Wharton's Criminal Evidence, Section 187 (13th ed., Torcia, ed.; 1972)." 336 So.2d at 822.
See also, McCormick on Evidence, § 251 (2d ed. 1972) (recognizing a modern trend toward admittingdespite its technical hearsay characterevidence of prior extrajudicial identifications of the accused by witnesses).
In considering whether the admission of hearsay testimony by an observer to an extrajudicial identification mandates reversal, we admittedly have considered whether the identifying party also testified as to the fact of the extrajudicial identification. E. g., State v. Ford, supra; State v. Smith, 285 So.2d 240 (La.1973). The fact that we have previously considered this factor does not make it sacramental to a finding of harmless error.
There is no mechanical requirement, in Ford, Smith, or in the other cases relied on by the majority that, as a predicate for finding harmless the introduction of evidence by a witness to an extrajudicial identification, the person making the identification, rather than an observer, testify to the fact of his having made it. All that is required, in my view, is an identification of the accused by the witness whose extrajudicial identification is subsequently introduced, provided that witness is available for cross-examination by the accused. In the present case Mrs. Davis made an in-court identification of the defendant as the offender. The Ford case does not require that such an identification be positive before corroborating evidence is introduced.
For the foregoing reasons, I respectfully dissent.
NOTES
[1] This decision follows a line of cases which includes State v. Smith, 285 So.2d 240 (La. 1973), State v. Maiden, 258 La. 417, 246 So.2d 810 (1971), and State v. Garon, 158 La. 1014, 105 So. 47 (1925), but it overrules State v. St. Amand, 274 So.2d 179 (La.1973) which had held to the contrary.
[2] With its next witness, Officer Deen, the state again attempted to bolster its case with evidence of Mrs. Davis' pretrial identification. On this occasion the witness stated that Mrs. Davis looked at accused's picture, "knew it was the subject that attacked her and said so." That testimony raised the identical legal issue here in dispute, but on this occasion the trial judge correctly ruled, as he should have done in the first instance, that the officer's testimony was inadmissible and should be disregarded by the jury.
[3] Many states, of course, do not allow even the identifier himself to testify as to a pre-trial identification that he made of the accused. See cases collected at 71 A.L.R.2d 449, § 7 et seq. and 1 Wharton's Criminal Evidence, § 187 at n. 56 (13th ed. 1972).
[4] Jackson v. State, Tex.Cr.App., 507 S.W.2d 231 (1974); Jones v. State, 17 Md.App. 209, 300 A.2d 424 (1973); People v. Smith, 105 Ill. App.2d 8, 245 N.E.2d 23 (1969); People v. Caramante, 32 A.D.2d 821, 302 N.Y.S.2d 374 (1969); People v. Townsend, 111 Ill.App.2d 316, 250 N.E.2d 169 (1969); People v. Weis, 32 A.D.2d 856, 301 N.Y.S.2d 186 (1969), cert. denied 397 U.S. 1047, 90 S.Ct. 1377, 25 L.Ed.2d 659; State v. Zaragosa, 6 Ariz.App. 80, 430 P.2d 426 (1967); Blankenship v. State, 1 Tenn. Cr.App. 178, 432 S.W.2d 679 (1967); Lyons v. State, Tex.Cr.App., 388 S.W.2d 950 (1965); and other cases collected at 1 Wharton's Criminal Evidence § 187, nn.82, 87 (13th ed. 1972) and 71 A.L.R. 449, § 13 et seq.
[5] A very few states do allow hearsay evidence concerning identification to be admitted if the identifying witness is available for cross-examination. 71 A.L.R.2d 449, §§ 14, 16.