SUMMERS, Chief Justice.*
The Orleans Parish Grand Jury jointly indicted Toni M. Coffil, Willie M. Coffil, and Joycelyn Coffil for the December 14, 1975 second degree murder of Joseph Harold, a violation of Article 30.1 of the Criminal Code. They waived trial by jury and were first tried on May 5, 1977; that trial ended in a mistrial declared by the trial judge over objection by the defense. The accused were found guilty of manslaughter in a second trial before another judge, and they were each sentenced to six years imprisonment. These sentences were suspended, however, and all defendants were placed on five years active probation. Defendants appealed, challenging the validity of the mistrial declared by the judge on his own motion and their subsequent retrial on identical charges.
Defendants’ five assignments of error present essentially one basic question: whether under the particular circumstances of this case, the retrial of defendants, following the trial judge’s declaration of a mistrial on his own motion, violated the double jeopardy provisions of the Constitutions of the United States and the State of Louisiana:[1] Because defendants contend a double jeopardy violation occurred, they urge that the trial court erred in refusing to grant the motion to quash filed in their second trial.
Before proceedings began in the first trial, defendants waived trial by jury. All witnesses were then summoned and advised of the court’s sequestration order. The State, through its Assistant District Attorney, made an opening statement and then proceeded with the presentation of the State’s case. The first three witnesses called by the State established the fact of the victim’s death and his identity. The next witness called was Elzada Ambrose, who testified that she knew the victim Joseph Harold, and that on the afternoon of the murder she saw the three Coffil defendants on their knees beating the victim. At this point the trial judge halted the trial and called counsel to his chambers.
In chambers the trial judge asked the prosecutor if Elzada Ambrose was his key witness. He was told that she was one of two key witnesses for the State. Whereupon, the trial judge announced that until then he was unaware that she might testify. Counsel were told that the judge had never seen her before, but he had known her son Glenn Ambrose since 1970. Glenn was then about ten years old. The judge had been a candidate for office at the time and Glenn was a shoeshine boy in the same building.
The judge then recounted how Glenn followed him around during the campaign and he became attached to the child. In the judge’s opinion Glenn had no guidance or home life. Since that time he became, in a sense, Glenn’s self-appointed guardian buying his Christmas clothing, his band uniform, helping him with his problems in school, consulting the school authorities concerning Glenn’s welfare and furnishing Glenn with money from time to time. Since 1970 the judge had consistently spent several hundred dollars each year on Glenn’s behalf.
Although he had never seen Glenn’s mother or other members of Glenn’s family, he apparently had information about the mother’s activities, which he did not disclose. This information convinced him, he said, that he could not in good conscience sit in the case. He disclosed to counsel that a moral problem was involved which would make it wrong for him to proceed.
At that point the prosecutor stated that if the judge could not give the witness the *CLXXXVIII same consideration in judging credibility he would give other witnesses the State would move to recuse the judge and ask that the case be allotted to another judge. (No written motion to recuse the judge was filed.) Apparently, sensing that the judge’s concern with the witness’ lack of credibility would adversely affect the prosecution, defense counsel objected to the withdrawal of the judge from the trial of the case. He argued the fact that the witness neglected her child and this was known to the trial judge, furnished no ground for his withdrawal in the middle of the trial. Other State’s witnesses would be called by the State, defense counsel argued, and Elzada Ambrose’s lack of credibility did not impair the State’s entire case.
The trial judge then declared a mistrial “for reasons that the information that the court has [it] feels that it might be biased insofar as one witness is concerned.” On this declaration of a mistrial counsel for the defense objected. The objection was overruled and the case was allotted to another section of the court. There defendants filed a motion to quash based on double jeopardy. Before any ruling on defendant’s motion, the case was returned to the section where the May 5, 1977 mistrial occurred; and another judge, who had been assigned to the case, denied the motion to quash. The case was then tried anew, and defendants were found guilty of manslaughter on November 23, 1977.
This appeal again raises the issue of double jeopardy.
Inasmuch as this appeal involves a reversal on a state constitutional grounds of the trial judge’s decision, in the trial of May 5, 1977, to declare a mistrial, it is unnecessary to consider the defense contention that the Federal Constitution was violated.
The constitutional proscription against double jeopardy is implemented in Article 591 of the Code of Criminal Procedure by adding that double jeopardy does not occur “where there has been a mistrial legally ordered under the provisions of Article 775 or ordered with the express consent of the defendant.”
Article 775 of the Code therefore sets the standards for determining the validity of a mistrial in these terms:
“A mistrial may be ordered, and in a jury case the jury dismissed, when:
“(1) The defendant consents thereto;
“(2) The jury is unable to agree upon a verdict;
“(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
“(4) The court finds that the defendant does not have the mental capacity to proceed;
“(5) It is physically impossible to proceed with the trial in conformity with law, or;
“(6) False statements of a juror on voir dire prevent a fair trial.
“Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
“A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial.”
It is apparent that, without the consent of the defendant, mistrials are permitted under certain limited circumstances such as inability of the jury to agree, physical impossibility to proceed, etc. Grounds for mistrial are further limited in this case because defendant waived trial by jury, therefore none of the quoted provisions relating to jury trials are pertinent here.
All other conclusions of a trial not authorized by Article 775 prior to verdict without the defendant’s consent will not be mistrials at all, even though the court may so label them, but will be illegal terminations, and in such cases the principles of double jeopardy will come into operation. Art. 775. Official Revision Comment (e)(2).
Obviously defendants have not consented to a mistrial here. Their strenuous objec *CLXXXIX tion at the time of the declaration of mistrial is conclusive on this point. There are, therefore, no grounds for a valid mistrial in the case at bar. The State argues that Article 775(5) permits the trial court to order a mistrial when it is physically impossible to proceed with the trial in conformity with law. Examples cited in support of its position include the disability of the judge; the illness of a juror or counsel preventing their continuance at the trial; death of a member of the juror’s family; assassination of the President of the United States on the first day of trial and newspaper publication of a letter which would render juror impartiality doubtful. These cases, in the main, are inapplicable here. They represent decisions in other jurisdictions.
Two cases in Louisiana are cited by the State. State v. Bennett, 341 So.2d 847 (La.1976), involved a situation where during the State’s closing argument at the first trial one of the jurors became visibly upset emotionally, whereupon the trial judge ordered a recess. A physician examined the juror and testified she was unable to continue as a juror at trial. Because no alternate juror was available, the judge declared a mistrial. Through a motion to quash, the accused raised the plea of former jeopardy at his second trial. This Court affirmed the conviction at the second trial and denied the plea of former jeopardy.
State v. Varnado, 124 La. 711, 50 So. 661 (1909) is cited by the State for the holding that the discharge of the jury owing to the illness of the judge did not bar a second trial, because there had been no jeopardy when the discharge of the jury was prompted by necessity.
. We find these cases distinguishable from the case at bar. Here the judge was not disabled by illness or otherwise. His sole basis for granting a mistrial was his commendable and humane attachment to the young son of the State’s witness, together with “information” available to him concerning the boy’s mother which would prevent him from rendering a fair and impartial verdict. The information which the judge professed was never disclosed, despite his reluctance to grant a mistrial.
Mere conclusory statements of the trial judge that undisclosed information would not permit him “in good conscience” to sit on the case does not warrant a mistrial. Nor does his announcement that a “moral problem was involved which would make it wrong for him to proceed” satisfactorily present a basis for a mistrial. There are no facts in these declarations upon which this Court can base a decision that it was “physically impossible to proceed with the trial in conformity with law,” and support the trial judge’s conclusion. Without these facts we cannot accept the conclusions.
A claim of bias, prejudice or other inability to grant the parties a fair trial must be based upon substantial evidence to sustain such a conclusion.
Different facts and circumstances may lead to a concern that a juror’s impartiality is impaired, but the same facts and circumstances may not be deemed adequate to affect a judge’s impartiality as the trier of fact. A judge’s training, learning and experience are expected to render him less susceptible to hearsay or other irrelevant influences. The judge’s professional and objective approach to the testimony of witnesses are essential to a fair and impartial trial, the cornerstone of the effective administration of justice, and that judicial attitude must prevail despite reasonable adversity.
We find no valid basis for a mistrial.
For the reasons assigned, the plea of double jeopardy is sustained, the conviction and sentence are reversed and set aside, and defendants are ordered released.
MARCUS, J., dissents and assigns reasons.
BLANCHE, J., dissents for reasons assigned by MARCUS, J.

 Chief Judge Paul B. Landry, Jr., participated in this decision as Associate Justice Ad Hoc sitting in the place of Justice Albert Tate, Jr., retired.

. U.S.Const. Amend. V, cl. 2: “nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb.”
La.Const. Art. I, § 15, cl. 2: “No person shall be twice placed in jeopardy for the same offense, except on his application for a new trial, when a mistrial is declared, or when a motion in arrest of judgment is sustained.”