2016-0611 (La.App. 1 Cir. 10/28/16)

**STATE of Louisiana**

v.

**Brian WHITE**

**2016 KA 0611**

Court of Appeal of Louisiana,
First Circuit.

Judgment Rendered October 28, 2016

Hillar C. Moore III, District Attorney, Dylan C. Alge, Assistant District Attorney, Baton Rouge, Louisiana, Attorneys for Appellee, State of Louisiana

Prentice L. White, Louisiana Appellate Project, Baton Rouge, Louisiana, Attorney for Appellant, Defendant-Brian White

BEFORE: PETTIGREW, McDONALD, AND DRAKE, JJ.

DRAKE, J.

|₂The State of Louisiana charged the defendant, Brian White, by bill of information with armed robbery, a violation of La. R.S. 14:64 (count one); aggravated flight from an officer, a violation of La. R.S. 14:108.1 (count two); hit- and-run driving (when a victim suffers serious bodily injury or death), a violation of La. R.S. 14:100(C)(2) (count three); and manslaughter, a violation of La. R.S. 14:31 (count four). The defendant entered a plea of not guilty and, following a jury trial, was found

guilty on count one. Because the jury was unable to reach a verdict on counts two, three, and four, the district court declared a mistrial as to those counts. The defendant filed a motion for new trial, which the district court denied.[1] The district court sentenced the defendant to twenty years at hard labor without the benefit of parole, probation, or suspension of sentence.[2] The defendant now appeals, challenging the sufficiency of the evidence presented by the State. For the following reasons, we affirm the defendant's conviction and sentence.

## FACTS

On January 20, 2014, Baton Rouge City Police Lieutenant Dave Mays was travelling on North Acadian Thruway near Choctaw Drive in his marked police unit when he observed what he thought to be a green Crown Victoria make a right turn onto North Acadian, without signaling. Lieutenant Mays attempted to stop the vehicle by activating his overhead lights, but the driver of the vehicle continued to travel. The vehicle accelerated to a high rate of speed, ran through stop signs, and collided with an oncoming vehicle. The video recorder in Lieutenant Mays's police unit captured the entire incident. The driver of the oncoming vehicle was ejected from his car and died on the scene. Immediately after the collision, the occupants of the green vehicle fled the scene.

The vehicle from which the occupants fled was a green Grand Marquis, which was similar to the description of a vehicle that was involved in a robbery that oc-

curred approximately eight hours earlier that day. Baton Rouge police officers investigated the scene and noticed evidence inside and around the Grand Marquis that could have been related to the robbery, including a 9 millimeter Beretta, a .380 Lorcin, a white hockey mask, and three cellular telephones. The officers also collected a temporary license tag from inside the Grand Marquis that indicated the registered owner was Antonio Veal. Also listed on the temporary license tag was "Melvin Morgan." Officers consulted Officer Jordan Lear with the Baton Rouge City Police Department armed robbery division and also contacted the robbery victim, Torrance Slaughter. The robbery victim told officers that the person who robbed him, stealing his iPhone, was a "bright-skinned" black male wearing a purple and gold LSU sweatshirt. The victim told detectives that there were two black males wearing white t-shirts inside the vehicle and made a partial identification of Morgan as the driver of the vehicle during the robbery.

Based on the information provided in their investigation, Baton Rouge City Police detectives developed suspects and prepared photographic lineups. The victim viewed the photographic lineups and identified the defendant as the person who robbed him at gunpoint and took his iPhone. Officers executed a search warrant on the defendant's home and located a purple and gold LSU sweatshirt inside of the defendant's bedroom closet. Detectives learned that four people were inside the vehicle at the time of the collision, including the defendant, Morgan, Gregory Gus-

---

1. We note the district court sentenced the defendant prior to denying the defendant's motion for new trial; however, because the defendant does not challenge his sentence on appeal and neither party has raised this issue, the error is harmless. *See* La. C.Cr.P. art. 873 and *State v. Augustine*, 555 So.2d 1331, 1333–34 (La. 1990).

2. Although the district court failed to state that the defendant's sentence is to be served without the benefit of probation, parole, or suspension of sentence, those conditions are self-activating under La R.S. 15:301.1.

tave, and Joshua Harris. Gustave and Harris gave recorded statements related to the vehicle collision and confirmed that all four were in the vehicle during the collision, and the defendant was driving. Gustave testified that the defendant and Morgan took turns driving throughout the day.

## SUFFICIENCY

■ In his sole assignment of error, the defendant challenges the sufficiency of the evidence. Specifically, he contends that the district court abused its discretion by accepting the jury's guilty verdict despite the armed robbery victim's "highly suggestive" in-court identification of the defendant.

At trial, the victim testified that he identified the defendant in a photographic lineup as the person who approached him with a gun and took his iPhone. The lineup was published to the jury. The State then asked the victim whether he saw the person who robbed him in the courtroom, and the following colloquy occurred:

[The State]: The man that robbed you, you just identified him in the lineup. Do you see him in court today? Is he in here? Do you see him?

[Victim]: No.

[The State]: And taking into consideration changes of hair, anything like that. Take a good look around. Do you see the man that robbed you?

[Victim]: Can you reach me my sack, so I can put my glasses on?

At that point, the defense objected to the State showing the lineup to the victim because he was unable to identify the de-

fendant in court. The victim responded that he wears glasses, and that is why he was unable to identify the defendant in court. The district court sustained the objection. After the victim put on his glasses, he identified the defendant as the person who robbed him. He explained that he is near-sighted. He further stated that he was sure that the defendant was the person who robbed him.

On cross-examination, the victim explained that although he could see the faces of individuals in the courtroom without his glasses, he did not initially see the defendant because he expected him to be wearing a prison uniform because he was informed that the defendant was incarcerated and because "[h]e looks very different in regular clothes."

The defendant argues that because the victim could not initially identify the defendant in the courtroom and was not wearing his eyeglasses at the time of the robbery, the court "should have harbored great reservations against accepting his identification of [the defendant] as the culprit since he may not have been wearing his glasses during the photographic lineup." The defendant also complains that the victim was "coached" by police officers in order to make his identification more "believable."

■ Although the defendant challenges the sufficiency of the evidence, in support of his argument, he cites the five-factor test in determining the reliability of identification of a suspect discussed in *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).[3] The

---

**3.** *Brathwaite* is concerned with the admissibility, not the sufficiency, of identification testimony. Once the identification testimony is introduced into evidence, as in the instant matter, an analysis under *Brathwaite* is not required. Specifically, *Brathwaite* addresses whether pretrial identification evidence should be excluded. The issue, the *Brathwaite* court noted, was whether the Due Process Clause compelled the exclusion, apart from any consideration of reliability, of pretrial identification evidence obtained by a police procedure that was suggestive and unnecessary. *Brathwaite*, 432 U.S. at 99, 97 S.Ct. at 2245; *see State v. Washington*, 2012 KA 0401,

defendant's reliance on this decision is misplaced. The State correctly argues that *Manson* is inapposite because the defendant in the instant case does not allege either the out-of-court or in-court identifications were tainted. Moreover, the defendant herein did not file a pretrial motion to suppress the identifications by the victim, nor did he object to the admission of pretrial identification testimony. A defendant who fails to file a motion to suppress identification, and who fails to object at trial to the admission of the identification testimony, waives the right to assert the issue on appeal. *State v. Moody*, 2000–0886 (La. App. 1 Cir. 12/22/00), 779 So.2d 4, 8, *writ denied*, 2001–0213 (La. 12/7/01), 803 So.2d 40; *see* La. C.Cr.P. arts. 703(D), 703(F), and 841(A); La. C.E. art. 103(A)(1); and *State v. Wilkerson*, 261 La. 342, 259 So.2d 871 (1972).

 The failure to file a motion to suppress identification notwithstanding, a conviction based on insufficient evidence cannot stand as it violates due process. *See* U.S. Const. amend. XIV and La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *see* La. C.Cr.P. art. 821(B); *State v. Ordodi*, 2006–0207 (La. 11/29/06), 946 So.2d 654, 660; and *State v. Mussall*, 523 So.2d 1305, 1308–09 (La. 1988). The *Jackson* standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. *See State v. Patorno*, 2001–2585 (La.App. 1 Cir. 6/21/02), 822 So.2d 141, 144. Furthermore, when the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. Positive identification by only one witness is sufficient to support a conviction. It is the factfinder who weighs the respective credibilities of the witnesses, and this Court will generally not second-guess those determinations. *See State v. Hughes*, 2005–0992 (La. 11/29/06), 943 So.2d 1047, 1051 and *State v. Davis*, 2001–3033 (La.App. 1 Cir. 6/21/02), 822 So.2d 161, 163–64.

Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64(A).

 The testimony of the victim alone is sufficient to prove the elements of the offense. *State v. Orgeron*, 512 So.2d 467, 469 (La. App. 1 Cir. 1987), *writ denied*, 519 So.2d 113 (La. 1988). The victim testified that on January 20, 2014, shortly after noon, he was walking toward a bus stop on Greenwell Springs Road while talking on his iPhone. Once he ended his phone conversation, the music that he was listening to through his earphones resumed playing. All of a sudden, the victim felt someone "snatch" his iPhone from out of his hand. The victim turned around and saw the defendant, wearing a purple, yellow, and gray LSU "hoodie," holding a gun in his right hand and the victim's iPhone in his left hand. The defendant pointed the gun toward the victim and asked, "Where the money at[?]" The victim responded that he did not have any money. Two men inside of a vehicle on the road told the defendant

2012 WL 5387400, at *2 (La. App. 1 Cir. Nov. 2, 2012).

to "come on." The victim ran home and contacted the police. He gave the police a description of the vehicle that the defendant got into after robbing him. According to the victim, the vehicle was a long, "old-school" Crown Victoria or Lincoln. After looking at a photograph, the victim identified the vehicle involved in the crash as the one in which the defendant was riding after he robbed the victim. The victim provided officers with a description of the defendant and the two other individuals in the vehicle. The victim viewed photographic lineups and identified the defendant as the person who robbed him. The victim testified that it did not take him any time to identify the person who robbed him because the incident occurred during broad daylight. The victim also identified the person who was driving the vehicle and the person sitting in the backseat. After putting his glasses on, the victim again identified the defendant in court as the person who robbed him. The victim explained that he is nearsighted, and although he was not wearing his glasses on the day of the incident, he was able to identify the defendant because he was standing close to him.

▮ |₈Based on the foregoing, the jury could have reasonably concluded that the defendant robbed the victim. The jury heard the testimony and viewed the physical evidence presented to it at trial and found the defendant guilty of armed robbery by a unanimous verdict. The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not re-weigh evidence to overturn a factfinder's determination of

guilt. *State v. Taylor*, 97–2261 (La.App. 1 Cir. 9/25/98), 721 So.2d 929, 932. In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. *State v. Higgins*, 2003–1980 (La. 4/1/05), 898 So.2d 1219, 1226, *cert. denied*, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. *See State v. Mitchell*, 99–3342 (La. 10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. *State v. Quinn*, 479 So.2d 592, 596 (La. App. 1 Cir. 1985).

▮ When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. *See State v. Moten*, 510 So.2d 55, 61 (La. App. 1 Cir.), *writ denied*, 514 So.2d 126 (La. 1987). The jury's verdict reflects the reasonable conclusion that the defendant, armed with a firearm, robbed the victim. |₉The defendant did not testify and presented no rebuttal testimony. *See Moten*, 510 So.2d at 61–62. In finding the defendant guilty, the jury clearly rejected the defense theory of misidentification.

After a thorough review of the record, we find that the evidence negates any reasonable probability of misidentification and supports the jury's unanimous guilty verdict on count one. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the

defendant was guilty of the armed robbery. *See State v. Calloway*, 2007–2306 (La. 1/21/09), 1 So.3d 417, 422 (per curiam). Therefore, this assignment of error is without merit.

**CONVICTION AND SENTENCE AFFIRMED.**