McDonald, j. hThe State of Louisiana charged the defendant, Brian White, by bill of informa.tion with armed robbery, a violation of LSA-R.S. 14:64 (count one); aggravated flight from an officer, a violation of LSA-R.S. 14;108.1 (count two); hit-and-run driving involving.bodily injury or death, a violation of LSA-R.S. 14:100 (count three); and manslaughter, a violation of LSA-R.S. 14:31 (count four). The defendant entered a plea of not guilty and, after a jury trial, was found guilty on count one. Because the jury was unable to reach a verdict on counts two, three, and four, the district court declared a mistrial as to those counts. The district court sentenced the defendant to twenty years imprisonment at hard labor, without the benefit of parole, probation, or suspension of sentence on count one.[1] He appealed that conviction, challenging the sufficiency of the State’s evidence against him. This court affírméd the defendant’s conviction and sentence on count one in State v. White, 16-0611 (La. App. 1 Cir. 10/28/16), 206 So.3d 387, 392-93. The defendant was then retried on the remaining' counts. After a jury trial, he was found guilty as charged on all three counts. The district court sentenced the defendant to two years imprisonment at hard labor on count two; ten years imprisonment at hard labor on count three; and forty years imprisonment at hard labor on count four. The district court ordered the sentences to run concurrently with each other and consecutively with that imposed on count one. The district court further ordered the defendant to pay $10,500 in restitution to the victim’s family to cover funeral expenses. The defendant now appeals, alleging two counseled and five pro se assignments of error. For the following reasons, we affirm the defendant’s convictions and sentences. ■ 1 ..FACTS On January' 20, 2014, Baton Rouge City Police Sergeant Dave Mays[2] was travel-ling on North Acadian Thruway near Choctaw Drive in his marked police unit when he observed what he thought to be a green Monte Carió ' or Crown Victoria make a right turn onto North Acadian without signaling. He attempted to stop the vehicle by activating his overhead lights, but the driver of the vehicle continued to travel. The vehicle accelerated to a high rate of speed, ran through stop signs, and collided with an oncoming vehicle. The entire incident was captured on the police unit’s dashboard camera. The driver of the oncoming vehicle, Elvin Dunn, Jr., was ejected from his car and died on the scene. Immediately after the collision, the occupants of the green vehicle fled. The investigation revealed that the green vehicle was a 1997 Mercury Marquis. The vehicle had no license plate, but a temporary license tag was located on the backseat. The temporary tag listed Antonio Veal as the registered owner and had the name “Melvin Morgan” written on the side. After speaking with Messrs. Veal and Morgan, and later with the occupants of the vehicle, the defendant was developed as the suspect, driving the vehicle at the time of the incident. SUFFICIENCY OF THE EVIDENCE In his first counseled and third pro se assignment of error, the defendant contends that the evidence presented by the State was insufficient. Specifically, the defendant argues that he was not the driver of the vehicle at the time of the collision. In his pro se brief, the defendant'argues that because the State could not “prove who was driving and who was not driving!,]” that “this should have been a case of ’First Degree Vehicular Negligent Injuring’ and no other charge!.]” The standard of review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime, and the defendant’s identity as the perpetrator of that crime, beyond a | reasonable doubt. In conducting this review, we also must be expressly mindful of Louisiana’s circumstantial evidence test, which states in part, assuming every fact to be proved that the evidence tends to prove, in order to convict, every reasonable hypothesis of innocence is excluded. LSA-R.S. 15:438; State v. Wright, 98-0601 (La. App. 1 Cir. 2/19/99), 730 So.2d 485, 486, writs denied, 99-0802 (La. 10/29/99), 748 So.2d 1157, 00-0895 (La. 11/17/00), 773 So.2d 732. When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing it in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence, and the facts reasonably inferred from the circumstantial evidence, must be sufficient for a rational juror to conclude beyond .a reasonable doubt that the defendant was guilty of every essential element of the crime. Wright, 730 So.2d at 487. When the key issue is the defendant’s identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. Positive identification by only one witness is sufficient to support a conviction. It is the factfinder who weighs the respective credi-bilities of the witnesses, and this court will generally not second-guess those determinations. State v. Hughes, 05-0992 (La. 11/29/06), 943 So.2d 1047, 1051; State v. Davis, 01-3033 (La. App. 1 Cir. 6/21/02), 822 So.2d 161, 163-64. Sergeant Mays testified that the driver of the green vehicle failed to stop after he activated his lights. The driver continued to drive through stop signs and did not come to a stop until he collided with the victim’s vehicle. Thereafter, Sergeant Mays saw three black males run from the vehicle. Mr. Morgan testified that the vehicle belonged to him, but was registered in Mr. Veal’s name, because Mr. Morgan was not old enough to purchase the vehicle. At the time of the incident, Mr. Morgan was riding in the front seat on the passenger’s side of the vehicle. Although the vehicle belonged to him, his cousin, the defendant, was driving. According to Mr. Morgan, there were two other passengers in the car, Gregory Gustave and Joshua Harris. Mr. Morgan explained that he'never allowed Messrs. | ^Gustave or Harris to drive his car, but,, he did, sometimes allow the defendant to do so. After the collision, he exited the vehicle and fled. One of his shoes came off during the accident. Mr. Morgan testified that the shoe he lost was the red Nike tennis shoe located at the scene and introduced into evidence. Both Mr. Gustave and Mr. Harris were called to testify at trial, but both alleged that they could not remember the incident. Recorded statements previously given by each were played for the jury. In then-statements, both Mr. Gustave and Mr. Harris stated that the defendant was driving the vehicle at the. time of the collision.’ DNA analysis was conducted on both the driver and passenger-side airbags in the front seat of the suspect vehicle as well as the steering wheel,'The DNA profile obtained from the swab from the driver-side airbag was consistent with being a mixture of DNA from at least three individuals. The defendant could not be excluded as a contributor to the profile. A partial DNA profile was obtained from the passenger-side airbag, and Mr. Morgan could not be excluded as the donor of the DNA in that profile. A DNA profile was also obtained from the swab from the steering wheel and was consistent with being a mixture from at least two individuals, Mr. Morgan and the defendant could not be excluded as contributors to that profile. East Baton Rouge Parish Coroner William Beau Clark testified that the victim’s cause of death was blunt force cranial, facial, and upper torso injuries due to his ejection from the vehicle. After a thorough review of the record, we are convinced that a rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find that the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of aggravated flight from an officer, hit-and-run driving, and manslaughter. The evidence presented at trial contradicts the defendant’s argument that he was not the driver of the vehicle at the time of the incident. All three of the other occupants of the vehicle testified that the defendant was driving at the time of the collision. Their statements were also consistent in that all three stated that Mr. Moi’gan was the front seat passenger and Messrs. Harris and Gustave sat in the back seat. The DNA evidence |npresented by the State corroborated that testimony in that the defendant could not be excluded as a contributor to the DNA profiles obtained from the driver-side airbag or the steering wheel, and Mr. Morgan could not be excluded as a contributor to the partial DNA profile obtained from the passenger-side airbag. The jury rejected the defendant’s theory that he was not the driver. When a case'involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. State v. Bias, 14-1588 (La App. 1 Cir. 4/24/15), 167 So.3d 1012, 1019, writ denied, 15-1051 (La. 5/13/16), 191 So.3d 1053; State v. Moten, 510 So.2d 55, 61 (La. App. 1 Cir.), writ denied, 514 So.2d 126 (La. 1987); see also State v. Mack, 13-1311 (La. 5/7/14), 144 So.3d 983, 989-90 (per curiam). No such hypothesis exists in this case. This court will not assess witness credibility nor reweigh the evidence to overturn a factfin-der’s determination of guilt. The trier of fact may accept or reject, in whole or in part, any witness’s testimony. Moreover, when there is conflicting testimbny about factual matters, the resolution of which depends upon a determination of witness credibility, the matter is one of the weight of the evidence, not its sufficiency. State v. Lofton, 96-1429 (La. App. 1 Cir. 3/27/97), 691 So.2d 1365, 1368, writ denied, 97-1124 (La. 10/17/97), 701 So.2d 1331. Further, we cannot say that the jury’s determination was irrational under the facts and circumstances presented to them. See State v. Ordodi, 06-0207 (La. 11/29/06), 946 So.2d 654, 662. An appellate court errs by substituting its appreciation of the evidence and witness credibility for that of the factfinder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the factfinder. See State v. Calloway, 07-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). Where jurors have an evidentiary basis for rationally rejecting the defense’s hypotheses of innocence, those hypotheses fail, and the'pertinent question for this court is whether the various alternative hypotheses advanced by the defendant do not simply offer a possible exculpatory .explanation, but are so reasonable that rational jurors, would necessarily have looked past any extraordinary coincidence and found a reasonable doubt of the defendant’s guilt. See Mack, 144 So.3d at 989. We find no error by the jury in this case. This assignment of error is -without merit. EXCESSIVE SENTENCE In his second counseled assignment of error, the defendant argues that the sentences imposed by the district court are excessive. Specifically, the defendant challenges the district court’s order that his sentences on counts two, three, and. four run consecutively with that imposed on count one. A thorough review of the record indicates that the defendant did not make or file a motion to reconsider sentence based oh any specific ground after the district court’s imposition of the sentences’. Under LSA-C.Cr.P. art. 881.1E, the' failure to make or file a motion to reconsider sentence shall preclude the defendant from raising an objection to thé sentence on appeal, including a "claim of excessiveness. See State v. Mims, 619 So.2d 1059 (La. 1993) (per curiam). The defendant, therefore, is procedurally barred from having this assignment of error reviewed because he failed to file a motion to reconsider sentence after being sentenced. See State v. Duncan, 94-1563 (La. App. 1 Cir. 12/15/95), 667 So.2d 1141, 1143 (en banc per curiam). The assignment of error is without merit. RIGHT OF CONFRONTATION In his first pro se assignment of error, the defendant contends he was denied his constitutional right of confrontation when the district court refused to allow him to question witnesses Gustave and Harris about their guilty pleas to simple robbery and illegal use of a weapon. Prior to the witnesses’ testimony, defense counsel asked whether she would be allowed to cross examine Mr. Gustave and Mr. Harris on their guilty pleas. The State responded that because the two witnesses were not yet sentenced, such examination was not appropriate. The district court agreed, noting that because the two witnesses had not yet been sentenced, they could still withdraw their guilty pleas. See LSA-C.E. art. 410A(1). Defense counsel objected to the district court’s “[disregard of] the code of evidence in not allowing [her] to ask these two witnesses, which goes to their credibility, whether or not they’ve pled to two felonies in another section of court a couple of months ago.” IsThe Sixth Amendment to. the United States Constitution guarantees an accused in a criminal prosecution the right to confront the witnesses against him. The right of confrontation does not merely allow the defendant to physically confront the witnesses against him but secures the defendant’s right to -cross examine the prosecution’s witnesses. Davis v. Alaska, 415 U.S. 308, 315-16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); State v. Robinson, 01-0273 (La. 5/17/02), 817 So.2d 1131, 1135. Also, the confrontation clause of Louisiana’s Constitution specifically and expressly .guarantees the accused the right to confront and cross examine the Witnesses against him. See LSA-Const. art. I, § 16. Cross examination is the primary means of testing the truthfulness of a witness’s testimony. Davis, 415 U.S. at 316, 94 S.Ct. at 1110; State v. Robinson, 817 So.2d at 1135. Exposure of a witness’s motivation in testifying is a proper and important function of the constitutionally protected right of cross examination. Davis, 415 U.S. at 316-317, 94 S.Ct. at 1111. To cross examine a witness effectively, a defendant must be afforded the opportunity to demonstrate any bias or self-interest that is attached to that Witness’s testimony. See LSA-C.E. art. 607D(1); State v. Rankin, 465 So.2d 679, 681 (La. 1985). A witness’s hope or knowledge that he will receive leniency from the State is highly relevant to establish his' bias or interest, as is the possibility that the prosecution may have some leverage over a witness due to pending criminal charges'or a plea agreement. See Rankin, 465 So.2d at 681; State v. Brady, 381 So.2d 819, 822 (La. 1980). ■ Plea agreements involving State witnesses serve as essential tools for the prosecution of many criminal cases. Consequently, they are fertile ground for cross examination by, a defendant seeking to expose bias on the part of the State’s witnesses. The specific terms of the witness’s plea agreement reveal the full extent of both the leverage being exerted by the State and the witness’s potential bias. The facts surrounding a witness’s plea agreement must be considered and weighed by the factfinder so as to judge the truthfulness of the witness’s testimony. Cf. Rankin, 465 So.2d at 681-82; Brady, 381 So.2d at 822. | gEvery witness in a criminal • case, by testifying, subjects himself to examination about his criminal convictions. Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal. LSA-C.E. art. 609.1B. The district court’s reason for limiting the defendant’s cross examination of Messrs. Gustave and Harris was that they had not yet been sentenced. The court reasoned that because they had not yet been - sentenced, they were still , able to withdraw their pleas, and if they chose to do so, evidence of their guilty pleas would not be admissible: See LSA-C.E. art. 410A(1). The district court concluded that their, pleas were “not a conviction until a sentence has been imposed.” We disagree. A guilty plea is a conviction and should be afforded a great measure of finality. State v. Carmouche, 589 So.2d 53, 55 (La. App. 1 Cir. 1991). Although a district court may permit the. withdrawal of a guilty plea before sentencing, a defendant has no absolute right to withdraw a previously entered plea of guilty. See State v. Ridgley, 96-0680 (La. App. 1 Cir. 2/20/98), 708 So.2d 793, 794, writ denied, 98-0759 (La. 7/2/98), 724 So.2d 206. Therefore, defense counsel should have been permitted to cross examine Messrs. Gustave and Harris about their guilty pleas. Confrontation errors, however, are subject to harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986) (noting that the Constitution entitles a criminal defendant to a fair trial, not a perfect one). When a confrontation error is discovered, the United States Supreme Court has instructed: The' correct inquiry is whether, assuming that the damaging potential of 'the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness’ testimony in the prosecution’s case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution’s case. Van Arsdall, 475 U.S. at 684, 106 S.Ct. at 1438. An error is harmless if the verdict rendered'was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993). At trial, both Messrs. Gustave and Harris testified that they did not remember whether they were involved in an accident. Neither provided any additional testimony about the incident, but their previously recorded statements were played, wherein both stated that the defendant was driving the vehicle at the time of the collision. The fact that the defendant was driving was already established by Mr. Morgan’s testimony as well as the DNA evidence presented at trial. After considering all relevant factors and the State’s evidence, we conclude that the jury’s verdicts were surely not attributable to the district court’s error in denying the defendant the right to cross examine Messrs. Gustave and Harris about their guilty pleas. Therefore, the confrontation error was harmless beyond a reasonable doubt. See LSA-C.Cr.P. art. 921; Rankin, 465 So.2d at 683-85. Cf. State v. Woods, 00-2147 (La. App. 1 Cir. 5/11/01), 787 So.2d 1083, 1095, writ denied, 01-2389 (La. 6/14/02), 817 So.2d 1153 (finding error where only one witness identified the defendant as the shooter, and his identification was confusing). This assignment of error is without merit. RIGHT TO PRESENT A DEFENSE In his second pro se assignment of error, the defendant argues the district court erred in refusing to allow defense counsel to review videotaped statements of three witnesses prior to their testimony. Specifically, he contends that his counsel’s inability to review the videotaped statements interfered with his right to present a defense, which is protected pursuant to United States Constitution Amendments VI and XIV and LSA-Const. art. I, § 16. During trial, defense counsel informed the district court that she did not have a copy of videotaped statements from Messrs. Morgan, Gustave, or Harris. She explained that she sat second-chair during the defendant’s first trial, and thereafter, it took “quite a few months to find our file because my new secretary inadvertently closed it out, with the first count being disposed of, and those items were not present in the messy file that I—so, I have informed [the State] of this, before the trial started, that I would like In some extra copies, so that I could review them.” Defense counsel went on to state that she had not received the copies from the State. She requested that she be allowed to review Mr. Morgan’s videotaped statement prior to his testimony. The State noted that Mr. Morgan did not testify during the defendant’s first trial, but the same statement was previously given and the State had “absolutely no problem before, if and when Mr. Morgan takes the stand,' providing an opportunity for [defense counsel] to be able to watch and review the tape herself.” The district court asked, “[W]hy don’t we tender it to her now, and then, that way, she can review it?” The court went on to state: My original problem is that this is the second time that we are going to try this case. Now, obviously, there was an added component, the armed robbery, to the first case. [Defense counsel] sat in second chair. She was an attorney. She took a very significant part in that trial. She asked a lot of questions. She voir dire’d [sic]. She cross examined witnesses. I’m not, now, going to penalize the State and not have them able to put their case on because [the defense’s] office inadvertently closed something out and it’s not—the evidence isn’t there now. We’re talking about the third day—-or, really, thé second day of trial and we’re just now bringing this to light that you don’t have copies of this and you want a chance to review it. ... It was reviewed the first time in the first trial and it—it should’ve been an issue brought up a week, two weeks ago when we were talking about possible outcomes or resolutions if he were to come in and plead guilty ... not the day of Mr. Morgan about to come in and testify. The district court continued, “The public defender’s office has satisfied discovery in this matter and this matter was brought to trial and it was—well, one count was disposed of. So, I—let me make—let me ask—the question, I guess, is are you asking for this to be excluded because it hasn’t been turned over to you?” The following colloquy then took place: [Defense counsel]: I—I just want to watch it. I don’t want to be blindsided at trial because I’ve never been given the opportunity to actually see it. When I realized— [District court]: Well, that’s fine. [Defense counsel]: —that I didn’t have it last week, I requested it from [the State], who did not have it, because allegedly, all these statements were actually in evidence in the clerk’s office and that he could not provide me a copy. So, it’s not like I waited ’til yesterday or today, judge. [District court]: Well, that’s the first time I’ve heard of it. [Defense counsel]: It’s been an ongoing request, [District court]: And I’ll tell you what we’re not going to do. We’re not going to have a jury, which we picked over the last ... day-and-a-half—-we’re not going to break in the middle of the day and say we can’t go h ¿forward anymore, so y’all are just going, to have to wait in that back room for a couple of hours while the attorneys do their job. That’s not what we’re going to do. Defense counsel argued that “it’s also about the administration of justice across the board ... not just about.,. keeping a jury waiting.” The district court asked how long the video was, and after the State responded that it was roughly 20 minutes, the- court stated, “We’re not going, to sit here for 20 minutes while the attorneys watch a video that they were- responsible for for [sic] the last year—at least a year,” The court continued, “This should’ve been done before we got to trial. Everybody was on board. We’ve been .... talking about this cáse for at least a week, if not’two. We knew it was coming and we’re not going to hold—hold up now because we want [to] play last-second tactics,” Defense counsel responded that she wanted to make the record clear for appellate purposes that she had “no motions, nor "is the’’court record clear that there was any discovery that included any—any discovery' of any tapes were not included on the two. I have discovery responses by the State ... it’s not on there.” The district court informed defense counsel that “[w]e were set for motions, discovery, and discovery was satisfied.-! have never set a trial in this court where the attorneys said discovery has not been satisfied, so we just need a trial date. No, Discovery was satisfied and that’s why we set a trial. You knew his name was on there. You knew from the reports that he gave a statement.” Defense counsel objected to the district court’s ruling and requested that Mr. Morgan’s taped statement be redacted to exclude anything related to the ai-med robbery. The State pointed out that if Mr. Morgan did choose to testify, as long as his testimony was consistent with his prior statement, it would not “even be concerned with the tape. The,only time that that would come in is if he gives an inconsistent statement.” Mr. Morgan’s videotaped statement was not -introduced into evidence at trial, Under (hese circumstances, the district court did not deny the defendant his right to present a defense by refusing to allow counsel to interrupt .the trial in order to watch Mr. Morgan’s videotaped statement. This assignment of error is without merit. I ^DOUBLE JEOPARDY In his fourth pro se assignment of error, the defendant argues that his second trial constituted double jeopardy. The Louisiana Constitution, Article 1, § 15 and LSA-C.Cr.P. art. 591 prohibit a person from twice being put in jeopardy of life or liberty for the same offense. However, this general rule is subject to the following exceptions: (1) if by the defendant’s own motion, a new trial is granted or judgment is arrested, or (2) if a mistrial has been legally granted under the provisions of LSA-C.Cr.P. art. 775 or ordered with the defendant’s express consent. Under LSA-C.Cr.P.- art. 775(2), a mistrial may be ordered when the jury is unable to agree upon a verdict. In such an instance, the defendant’s consent is not necessary. See State v. Coffil, 377 So.2d 106, 108 (La. 1979). At the defendant’s first trial, the jury was unable to - reach a verdict on counts two, three, and four, and the district court declared a mistrial as to those counts. A mistrial granted for this reason is recognized as being a legally granted mistrial and does not constitute double jeopardy. See LSA-C.Cr.P. arts. 591 and 775; State v. Lang, 430 So.2d 1239, 1241 (La. App. 1 Cir. 1983). Accordingly, this assignment of error is without merit. PATENT ERROR In his fifth pro se assignment of error, the defendant requests a review for patent error, challenging the amount of restitution ordered by the district court as an illegal fíne and claiming that the district court imposed an indeterminate sentence on count three. This court routinely reviews the record for such errors, whether or not such a request is made by a defendant or defense counsel. Our review for patent error is pursuant to LSA-C.Cr.P. art. 920, which provides that the only matters to be considered on appeal are errors designated in the assignments of error and error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence. Pursuant to LSA-C.Cr.P. art. 883.2, in all cases in which the court finds a pecuniary loss to a victim, or in any case where the court finds that costs have been incurred by the victim in connection with a criminal prosecution, the trial court shall order the defendant to provide restitution to the victim as part of any sentence that the. court shall impose. Restitution cannot always be determined with Inexactitude, and a district court therefore has great discretion in setting the amount, as long as the cpurt complies with LSA-C.Cr.P. art. 883.2A. See State v. Perry, 15-0510 (La. 2/5/16), 183 So.3d 509. Here, the district court ordered the defendant to pay $10,500.00 to the victim’s family. Contrary to the defendant’s pro se argument, the amount imposed is not a fine under LSA-R.S. 14:100 (count three), but rather, is restitution ordered to cover funeral expenses incurred by the victim’s-family. .The defendant also contends that the district court did “not direct that [the sentence imposed on count three was] to be served with or without hard labor[.]” However, our review of the record reveals that the district court imposed.the sentence on count three at hard labor. Accordingly, these arguments are without merit. After, a careful review of the record in these proceedings, we have found no reversible errors. See State v. Price, 05-2514 (La. App. 1 Cir. 12/28/06), 952 So.2d 112, 123-25 (en banc), writ denied, 07-0130 (La. 2/22/08), 976 So.2d 1277. CONVICTIONS AND SENTENCES AFFIRMED. . Although the district court did not state that the defendant’s sentence, was to be served without the benefit of probation, parole, or suspension of sentence, those conditions are self-activating under LSA-R.S.15:301,1. . At the time of trial, Sergeant Mays had been promoted to a lieutenant. For ease of reference, we refer to him as Sergeant Mays in this opinion.