CRAIN, J.
The defendant, James Mills Jr., appeals his second-degree murder conviction and sentence of life imprisonment without benefit of parole, probation, or suspension of sentence. We affirm.
FACTS
On the night of October 5, 2014, the defendant and a masked man approached Miguel Cueva-Alvarado and Hancy Sanchez, who were smoking outside Hancy's apartment near the intersection of Staring Lane and Burbank Drive in Baton Rouge. The defendant carried a .38 Special revolver and wore a black jacket and hat, but his face was not covered. Miguel and Hancy were shown the gun and told to raise their hands, then the masked man went through their pockets and took their cell phones. The perpetrators began walking away, but the defendant went back to Hancy and asked for the password to his phone. When Hancy did not answer and called out to another friend, the defendant shot Hancy in the head, killing him. As the defendant fled, Miguel grabbed and pulled off his jacket. The defendant also left the gun at the scene. Within hours, Miguel identified the defendant as the shooter in a six-person photo lineup. Miguel testified at trial and identified the defendant as the shooter.[1]
DISCUSSION
The defendant contends he was denied his right of confrontation and right to a fair trial by the trial court's refusal to allow cross-examination of Miguel about pending criminal charges, including charges initiated in 2017 in Ascension Parish for possession with intent to distribute cocaine, illegal carrying of a weapon while in possession of cocaine, and criminally negligent discharge of a firearm, as well as federal charges for violating immigration laws.
Any party may attack the credibility of a witness by questioning him about any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony or through extrinsic evidence showing the witness' bias, interest, corruption, or defect of capacity, unless otherwise provided by legislation. La. Code Ev. art. 607. Louisiana's Code of Evidence specifically provides that every witness in a criminal case subjects himself to examination relative to his criminal convictions, and that evidence of an arrest, arrest warrant, indictment, prosecution, or acquittal may not be used to impeach the witness' general credibility. See La. Code Ev. art. 609.1 ; State v. Brady , 381 So.2d 819, 821-22 (La. 1980). However, this does not mean a witness may never be questioned about arrests or pending charges.
*1047 A criminal defendant has the fundamental constitutional right to confront the witnesses against him, which includes the right to cross-examine the state's witnesses. See U.S. Const. amend. 6 ; La. Const. art. 1 § 16 ; Davis v. Alaska, 415 U.S. 308, 315-16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974) ; State v. Robinson, 01-0273 (La. 5/17/02), 817 So.2d 1131, 1135. Cross-examination is the primary means of testing the truthfulness of a witness' testimony and an essential safeguard of a fair trial. See Davis, 415 U.S. at 316, 94 S.Ct. 1105 ; Pointer v. Texas, 380 U.S. 400, 404, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) ; Robinson, 817 So.2d at 1135. To cross-examine a witness effectively, a defendant must be afforded the opportunity to demonstrate any bias or self-interest attached to the witness' testimony. See La. Code Evid. art. 607D(1); State v. Rankin, 465 So.2d 679, 681 (La. 1985). A witness' hope or knowledge he will receive leniency from the state is highly relevant to establish bias or interest, as is the possibility the prosecution may have some leverage over a witness due to pending criminal charges or a plea agreement. See Rankin, 465 So.2d at 681 ; Brady, 381 So.2d at 822 ; State v. Franks, 363 So.2d 518, 520 (La. 1978) ; State v. Mills , 13-0573 (La. App. 1 Cir. 8/27/14), 153 So.3d 481, 489, writs denied, 14-2027 (La. 5/22/15), 170 So.3d 982, and 14-2269 (La. 9/18/15), 178 So.3d 139. Thus, cross-examination regarding arrests or pending charges may be appropriate to expose a witness' motivation in testifying. See Brady, 381 So.2d at 822.
After the state indicated Miguel would testify, the trial court recessed the jury to address the defendant's request to question Miguel about his arrest history and pending criminal charges. The state argued it would be inappropriate to question Miguel, an armed robbery victim in this case, about events that occurred subsequent to this crime. Further, the state argued Miguel faced prosecution in another parish and deportation by federal immigration authorities, and Miguel expressed his willingness to testify after the state clearly explained Miguel "is not getting a deal" and the prosecutor in this case had no ability to help him. The defense maintained the questioning was proper to establish the hope that cooperation in this case would result in favorable treatment in the proceedings in the other parish or by the federal authorities. The trial court denied the defendant's request, reasoning Miguel's arrest history was not relevant given his statement on the night of the crime and, based on the state's representations, Miguel had no reasonable expectation of advantageous treatment as a result of his testimony. The trial court confirmed Miguel would testify dressed in prison garb and the jury would know he was incarcerated; however, the trial court found no basis for providing the jury with details of his arrests.
With no basis beyond speculation for arguing Miguel's testimony was biased because he hoped to garner favor from the state relative to his pending charges, we find no error in the trial court's ruling. Cf. State v. Grace, 94-295 (La. App. 5 Cir. 9/27/94), 643 So. 2d 1306, 1307-09 (the trial court properly refused to allow cross-examination of the state's witness regarding charges against him where there was no evidence of a deal or other indicia of bias or prejudice); Davis, 818 So. 2d at 81-83 (questioning about pending charges in another jurisdiction that were placed on inactive status should have been allowed where the defendant was attempting to show that by collaboration between jurisdictions, the state had some leverage over the witness); State v. Harrison, 484 So. 2d 882, 883-84 (La. App. 1 Cir.), writ denied, 488 So. 2d 688 (La. 1986) (questioning about dismissed charges should have been allowed where the time limitation on prosecuting *1048 the witness had not lapsed). The jury was aware Miguel was incarcerated, and Miguel testified he was in this country illegally. Furthermore, Miguel was not just a witness, but a victim of armed robbery in this case, and testified consistently with his identification of the defendant as the shooter made hours after the crime. These facts and the evidence of the defendant's guilt, including a video interview where the defendant implicated himself as at least a principal to the murder,[2] the defendant's jacket at the murder scene, and the defendant's DNA on the victims' cell phones ensure the guilty verdict was not attributable to the trial court's refusal to allow the defendant to question Miguel regarding the nature of his pending charges. Cf. Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (confrontation errors are subject to harmless error analysis); State v. Harris, 17-303 (La. App. 5 Cir. 12/20/17), 235 So. 3d 1354, 1373-74 (refusal to allow cross-examination of the victim regarding pending attachments did not deprive him of his right to confrontation, and any error was harmless).
CONVICTION AND SENTENCE AFFIRMED.
Holdridge J. concurs The result

The grand jury indictment identifies Jordan Derrell Harris as the defendant's co-defendant; however, the disposition of the charges against Harris is not reflected in this record.

In his second police interview, the defendant stated he was with "Bobby," who went to "stick ... up" "the two Mexicans" and shot one of them. The defendant explained he let Bobby wear his jacket, which had his cell phone in the pocket, and went with Bobby because he wanted his things back. The defendant further explained he pulled his shirt up to cover his face and patted down the victims' pockets when Bobby pointed the gun at him. In his third interview, after the defendant was told Bobby was in jail at the time of the crime, the defendant claimed he didn't know the man's identity.