NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 KA 0402

STATE OF LOUISIANA

VERSUS

GLENN DAVID MILLS, JR.

*Judgment Rendered:* **NOV 1 6 2023**

\* \* \* \* \* \* \* \*

**Appealed from the**
**22nd Judicial District Court**
**In and for the Parish of St. Tammany**
**State of Louisiana**
**Case No. 2604-F-2019**

**The Honorable Richard A. Swartz, Judge Presiding**

\* \* \* \* \* \* \* \*

Warren L. Montgomery
District Attorney
Matthew Caplan
Assistant District Attorney
Covington, Louisiana

Counsel for Appellee
State of Louisiana


Holli Herrle-Castillo
Marrero, Louisiana

Counsel for Defendant/Appellant
Glenn David Mills, Jr.

\* \* \* \* \* \* \* \*

BEFORE: GUIDRY, C.J., CHUTZ, AND LANIER, JJ.

**LANIER, J.**

The defendant, Glenn David Mills, Jr., was charged by amended grand jury indictment with one count of first degree rape of a victim under the age of thirteen (count one), in violation of La. R.S. 14:42(A)(4), and one count of molestation of a juvenile (count two), in violation of La. R.S. 14:81.2, to which he pled not guilty. Following a jury trial, the defendant was found guilty as charged on both counts. He was sentenced to life imprisonment without the possibility of probation, parole, or suspension of sentence on count one, and fifty years imprisonment without the possibility of probation, parole, or suspension of sentence on count two, to be served concurrently. The defendant now appeals, assigning as error the trial court's limiting of defendant's cross-examination and its admission of hearsay statements. For the following reasons, we affirm the convictions and sentences.

## FACTS

The victim, S.S.,[1] began living with her aunt and uncle (M.M. and the defendant) when she was five-years-old. Due to an intellectual disability and cerebral palsy, S.S. needed more care than her mother was capable of providing, since her mother worked and M.M. stayed at home.

On July 10, 2019, M.M. returned from a doctor's appointment to her home at 528 Legendre Drive in Slidell. Upon entering the home, she saw her husband, the defendant, downstairs with their son, their two nephews, and their nine-year-old niece, S.S.

M.M. then received a text that her prescription was ready, and she immediately left her home to go to the pharmacy to pick it up. When she returned home the second time, she saw her son and two nephews playing downstairs. They told her that the defendant and S.S. were both upstairs.

---

[1] Because these charges involve sex offenses, we reference the victim and their family members by their initials. See La. R.S. 46:1844(W).

2

Upon walking into the upstairs bedroom, M.M. saw the defendant and S.S. standing in the doorway to the bathroom, facing one another. The defendant did not see M.M., but S.S. looked in her direction. The defendant then whispered something to S.S., and M.M. observed S.S. perform oral sex on the defendant. When the defendant noticed M.M. standing in the room, he immediately stopped and pulled up his pants. An argument between the defendant and M.M. ensued, part of which M.M. recorded on her cell phone. In the recording, the defendant can be heard saying, among other things: "I don't know what the f*** I was thinking. It was stupid[,]" and "Wow, I just threw my whole f***ing life away." The defendant later left the home and M.M. called 911. Shortly after the incident occurred, M.M. also received text messages from the defendant in which he apologized for the pain he caused, and asked if he could give their son one last hug.

After the police arrived, M.M. was instructed to bring S.S. to Children's Hospital in New Orleans where a rape kit was performed on July 11, 2019. The defendant was arrested in Jefferson Parish on July 12, 2019. On July 22, 2019, S.S.'s mother, M.M.'s sister, took S.S. to Hope House Children's Advocacy Center for a forensic interview. However, due to S.S.'s intellectual deficits and difficulty talking to strangers, they were unable to conduct an interview.

On September 2, 2022, the State filed a "Second Notice of Additional Information," wherein it alleged that two days after the crime in question was committed, S.S.'s mother asked S.S. why her aunt and uncle (M.M. and the defendant) were fighting. S.S. replied that it was because the defendant "punched her in the face with his d***." S.S.'s mother asked her to clarify, and S.S. pointed between her legs. The defendant then filed a "Motion to Exclude Hearsay Statement from Witness who has Never Been Competent," arguing that S.S.'s statement was inadmissible under both the initial disclosure of sexual assault

exception embodied by La. Code Evid. art. 804(B)(5) and under La. Code Evid. art. 403. The trial court denied the defendant's motion.

The defendant did not testify at trial.

### ASSIGNMENT OF ERROR NUMBER ONE

*In his first assignment of error*, the defendant contends that the trial court abused its discretion and violated his constitutional right of confrontation by limiting his cross-examination of M.M. as to her possible motive for fabricating allegations against the defendant.

In all criminal prosecutions, the accused shall have the right to be confronted with the witnesses against him. See U.S. Const. amend. VI; La. Const. art. I, § 16. Confrontation means more than being allowed to confront the witness physically. The main and essential purpose of confrontation is to secure the opportunity of cross-examination. A witness may be cross-examined on any matter relevant to any issue in the case, including credibility. La. Code Evid. art. 611(B). The exposure of a witness's motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. **State v. Henderson,** 2013-0074 (La. App. 1st Cir. 9/13/13), 135 So.3d 36, 50; writ denied, 2013-2327 (La. 3/21/14), 135 So.3d 617; see also **Davis v. Alaska,** 415 U.S. 308, 315-16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974).

However, the Confrontation Clause does not prevent a trial judge from imposing limits on the defendant's inquiry into the potential bias of a prosecution witness. To the contrary, trial judges retain wide latitude to impose reasonable limits on such cross-examination based upon their concerns regarding harassment, prejudice, confusion of the issues, witness safety, and interrogation that is repetitive or only marginally relevant. **Delaware v. Van Arsdall,** 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); see also **State v. Gautreaux,** 2014-594 (La. App. 3d Cir. 11/5/14), 153 So.3d 1232, 1239, writ denied, 2014-

4

2521 (La. 9/18/15), 178 So.3d 144. The ruling of the trial court as to the scope and extent of cross-examination should not be disturbed absent an abuse of the court's broad discretion. **State v. Draughn**, 2005-1825 (La. 1/17/07), 950 So.2d 583, 616, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007).

In the instant case, the defendant sought to cross-examine M.M. as to potential issues in their relationship, which would give rise to a motive for M.M. "to be less than candid about the allegation[.]" During cross-examination, the following exchanges occurred:

| | |
|---|---|
| **DEFENDANT:** | More generally speaking, you guys had had a pretty difficult time in your relationship? |
| **STATE:** | Objection to vagueness. |
| **COURT:** | Sustained. |
| **DEFENDANT:** | At the time of this – in July 2019, were you-all fighting? |
| **STATE:** | Objection to vagueness and relevance. |
| **COURT:** | Sustained. |
| *** | |
| **DEFENDANT:** | Was there an incident involving a woman at a Wal-mart gas station . . . about jealousy there? |
| **STATE:** | Objection to relevance and to vagueness. No context as to when or why. |
| **COURT:** | Rephrase your question. Sustained. |
| **DEFENDANT:** | Had there been some issues with jealousy in the past with [the defendant]? |
| **STATE:** | Objection to relevance and vagueness again, Your Honor. |
| **DEFENDANT:** | It would go to motive and what we talked about, previous objection. |

At this time, the following discussion was held at the bench:

| | |
|---|---|
| **COURT:** | If you're trying to impeach your witness, this is not the proper way to impeach. |
| *** | |
| **DEFENDANT:** | I think what we're doing is exploring whether or not [M.M.] has a motive to be less than candid about the allegation, Your Honor . . . No, I don't know, but until she answers the question we won't know that, and she's the only available witness. I don't know that we have the obligation to have positive witnesses in order to effectively cross-examine the motive. |
| **COURT:** | - - because she was jealous? |
| **DEFENDANT:** | I don't know that we have to formulate the question exactly that, Judge. Because, clearly, if you telegraph that that's where you're going, then obviously you're going to get the pretty expected response of no. |
| **COURT:** | I would sustain the objection. |

5

**DEFENDANT:** Please note our objection and the obstruction to our right to cross-examination, Your Honor.

Courts have routinely upheld a defendant's right to cross-examine witnesses against him in order to establish their bias or interest. See, e.g., **State v. White**, 2017-0308 (La. App. 1st Cir. 9/15/17), 228 So.3d 213, 219-20 (trial court erred in precluding the defendant from cross-examining witnesses regarding their guilty pleas); see also **State v. Rankin**, 465 So.2d 679, 681 (La. 1985). However, cross-examination may be properly limited where there is no basis beyond speculation that a witness is biased. See **State v. Mills**, 2018-0047 (La. App. 1st Cir. 9/24/18), 259 So.3d 1045, 1047, writ denied, 2018-1686 (La. 4/15/19), 267 So.3d 1128; **State v. Grace**, 94-295 (La. App. 5th Cir. 9/27/94), 643 So.2d 1306, 1308 (trial court correctly refused to allow cross-examination on witness's pending charges where there was no evidence of a deal or any other indicia of bias or prejudice).

Based on the record before us, we cannot say that the trial court abused its discretion by limiting the defendant's cross-examination of M.M. Initially, we note that the defendant was not prohibited from introducing relevant information regarding M.M.'s possible ulterior motive; he was merely precluded from engaging in a "fishing expedition" for problems in M.M.'s relationship with the defendant. Furthermore, the record contains no information to suggest that M.M. fabricated the allegations. Finally, the defendant herein failed to demonstrate what evidence he sought to introduce or what further information he hoped to glean from his questioning of M.M., particularly where he admitted that he was merely "exploring" the issue. See **State v. Shaw**, 00-1051 (La. App. 5th Cir. 2/14/01), 785 So.2d 34, 46, writ denied, 2001-0969 (La. 2/8/02), 807 So.2d 861 (defendant questioning victim about an inadmissible document was otherwise allowable for impeachment, even though the document should not have been admitted). Therefore, we find that there was no basis beyond mere speculation that M.M.'s

6

testimony was motivated by her allegedly troubled relationship with the defendant, and the trial court did not err in limiting the defendant's cross-examination of M.M. See **Mills**, 259 So.3d at 1047.

This assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, the defendant argues that the trial court erred in allowing S.S.'s out-of-court statement, made to her mother shortly after the incident, to be admitted into evidence. Specifically, the defendant contends that the trial court failed to consider that the probative value of the statement was far outweighed by its prejudice.

Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. Code Evid. art. 801(C). Hearsay is not admissible except as otherwise provided by the Code of Evidence or other legislation. La. Code Evid. art. 802. Pursuant to La. Code Evid. art. 804(B)(5), a statement is not excluded by the hearsay rule if the declarant is unavailable and it is "made by a person under the age of twelve years and the statement is one of initial or otherwise trustworthy complaint of sexually assaultive behavior." A declarant can be "unavailable as a witness" when the declarant cannot or will not appear in court to testify due to a then existing physical or mental illness, infirmity, or other sufficient cause. La. Code Evid. art. 804(A)(4).

However, such a statement is still subject to the balancing test provided by La. Code Evid. art. 403, where, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" See **State v. Brown**, 562 So.2d 868, 878 (La. 1990). A trial court's determination regarding the relevancy and admissibility of evidence will not be overturned on appeal absent a clear abuse of

7

discretion. **State v. Freeman**, 2007-0470 (La. App. 1st Cir. 9/14/07), 970 So.2d 621, 625, <u>writ denied</u>, 2007-2129 (La. 3/14/08), 977 So.2d 930.

When S.S. was brought to the Children's Advocacy Center for a forensic interview shortly after the incident occurred, two professionals determined that S.S. was "currently unable to understand simple commands/questions as well as communicate effectively." Moreover, S.S.'s mother reported to the interviewers that S.S. "confuses 'yes/no', has a difficult time comprehending simple tasks/questions, and sometimes has to be 'led to the right answer when asked.'" Because these deficits "would inhibit the interviewer from adhering to best-practice protocol[,]" no forensic interview was conducted.

During an August 23, 2022 meeting between S.S. and the State, S.S. was able to give accurate answers when asked about people and things in the room. However, S.S. was unable to verbalize the difference between a truth and a lie. When asked if the defendant ever asked her to put parts of his body in her mouth, she became seemingly uncomfortable and responded in the negative. When specifically asked if the defendant showed her his penis, she said yes. On the drive home from the meeting, S.S.'s aunt informed the State that S.S. had just disclosed to her that the defendant put his penis in her mouth on the date that her aunt found S.S. and the defendant in the bathroom. S.S. and her aunt then returned to the District Attorney's Office, where S.S. stated that she remembered being in the bathroom of her aunt's house with the defendant. When asked what occurred in the bathroom, S.S. stated that the defendant put his "bird" in her mouth. When shown a diagram of a man and asked to identify the "bird," S.S. pointed to the man's penis. The State then memorialized these statements in the "State's Notice of Additional Information," which was provided to the defendant.

In response to the State's Notice, the defendant filed a "Motion to Bar Witness Testimony for Lack of Competency," in which he alleged that S.S. was

8

not competent to testify at trial because she lacked the "proper understanding" required by La. Code Evid. art. 601. At the hearing on the matter on August 30, 2022, S.S. was called to testify. When the trial court asked how she was doing, S.S. responded with "Good." When asked if she had been in a courtroom before, she nodded affirmatively. S.S. responded to each basic question asked by the trial court, such as how old she was, what school she attended, and how she was feeling; however, as the questions became more complex, S.S.'s answers became vague, contradictory, and non-responsive. To illustrate, the following exchanges occurred:

COURT: Have you ever talked with anybody about telling the truth or not telling the truth? Do you understand me?
S.S.: Yes.
COURT: Okay. Do you know what it means to tell the truth and not tell a lie?
S.S.: It's—I can't take it off. There's a string.
COURT: [S.S.]?
S.S.: Yes.
COURT: ... How about if I told you that the sky was green—
S.S.: The sky is blue.

S.S. was referring to a loose string on her pants. As questions proceeded, her answers become more focused on the string:

COURT: Do you know what it means to tell a lie? What would be a lie?
S.S.: I can't take this string off.
COURT: That you could get the string off, would that be a lie?
S.S.: No, I can't get the string off.
. . .
COURT: Do you think you could tell the truth to the people in this room?
S.S.: Yes. I can't take the string off.

Counsel for the defendant then cross-examined S.S.:

DEFENDANT: [C]an you give me an example of someone—can you tell me about someone telling a lie?
S.S.: Yes. I can't take the string off.
DEFENDANT: When have you heard someone tell a lie before?
S.S.: I don't know.
DEFENDANT: Have you ever heard someone tell a lie?
S.S.: No.

9

**DEFENDANT:** You've been in a courtroom before?
**S.S.:** No.

At the hearing's conclusion, the trial court ruled as follows:

Based upon my attempt to communicate with [S.S] and her responses, or lack of responses, and apparent inability to focus and respond; and based upon the fact that she has been interviewed at both the Children's Advocacy Center and the District Attorney's Office - - and I think they found the same thing; that she does not have the mental ability to communicate effectively, that she cannot respond as to whether or not something might be the truth or something might be a lie. Thus; the Court finds that she does not have the proper understanding to testify in a court of law and finds that she's not a competent witness and grants the motion to bar her testimony.

Thereafter, the State filed its "Second Notice of Additional Information." The defendant then filed its "Motion to Exclude Hearsay Statement from Witness who has Never Been Competent." After a hearing, the trial court issued a ruling denying the defendant's motion and stating: "The Court finds that the declarant, S.S., is unavailable to testify, and the statements are of initial complaints of sexually assaultive behavior from a person under twelve years old. Accordingly, said statements are excluded from the hearsay rule and are admissible."

Prior to S.S.'s mother's testimony testifying at trial, the State proffered her testimony, wherein she recounted S.S.'s statement that the defendant "slapped her in the face" with his penis. The trial court again ruled that the testimony was admissible, finding that the "initial complaint is trustworthy, as a conversation between a child and a mother who has that bond which allows them to communicate about many things that she might not be able to communicate with other people[.]"

On appeal, the defendant asserts that the trial court abused its discretion by admitting S.S.'s statement under the hearsay exception set forth in La. Code Evid. art. 804(B)(5) and that the statement was unduly prejudicial under La. Code Evid. art. 403. We agree.

10

La. Code Evid. art. 804(B)(5) permits the introduction of a statement made by a person under the age of twelve who is unavailable to testify, if the statement is one of initial *or otherwise trustworthy* complaint of sexually assaultive behavior. (Emphasis added). S.S.'s statement was a disclosure of sexual assault by an unavailable witness under the age of twelve. However, given the specific circumstances presented herein and discussed *infra*, we find that the statement lacked evidence of trustworthiness and thus was not admissible as an exception to the hearsay rule under La. Code Evid. art. 804(B)(5).

The exceptions to the hearsay rule listed in La. Code Evid. art. 804 are based upon the conclusion that when the qualifying circumstances are met, there are usually sufficient grounds for crediting the trustworthiness of the out-of-court statement to justify making an exception to the hearsay rule. See La. Code Evid. art. 804, Comment (a), Comments to Introductory Clause of Paragraph B – 1988. With regard to art. 804(B)(5), the exception allowing an otherwise inadmissible out-of-court complaint of sexually assaultive behavior is predicated on the assumption that such a complaint is inherently trustworthy.

Such an assumption cannot be made in the instant case. S.S. was unable to complete a forensic interview in July of 2019 because, according to the interviewers, S.S. was unable to understand simple commands or communicate effectively. It was further noted that S.S. confused yes and no, and, troublingly, sometimes must "be led to the right answer" when asked a question. This strongly suggests that S.S. would be more susceptible than most to being coached or led into making a statement, the veracity of which S.S. would have no capacity to verify.

The same concerns were further evidenced during S.S.'s testimony at the competency hearing, wherein S.S. gave contradictory answers to rote, concrete questions regarding whether or not she had been in a courtroom before and

whether or not she was able to read. Noting these same concerns, the trial court found S.S. not competent to testify.

Moreover, the State conceded S.S.'s unreliability as a narrator in its August 23, 2022 "Notice of Additional Information," wherein it stated that S.S. "was unable to verbalize the difference between a truth and a lie." Finally, while the State alleged in its September 2, 2022 "Second Notice of Additional Information" that S.S. described the incident to her mother in July of 2019, this statement was not disclosed by S.S.'s mother until over three years after it was purportedly made and only a few days after S.S. was deemed not competent to testify. The length of time between the disclosure and when it was reported bears directly on the statement's reliability.

Given the facts presented herein, including the circumstances surrounding the timing and manner in which S.S.'s statement was disclosed, S.S.'s demonstrated and consistent inability to reliably convey information, and whether or not S.S.'s statement could be considered an initial disclosure of sexual assault under La. Code Evid. art. 804(B)(5), the statement lacked the inherent trustworthiness upon which the exception is based and was therefore inadmissible. Accordingly, we find that the trial court's ruling that S.S.'s statement was trustworthy because it was given to her mother was an abuse of discretion.[2] Moreover, because the statement was not trustworthy, its probative value was far outweighed by its prejudice, and the statement was inadmissible under La. Code Evid. art. 403.

Despite the erroneous admission of evidence, however, the verdict will not be reversed if the reviewing court determines that the error was harmless beyond a

---

[2] We note that while a child such as S.S. may conceivably be able to more effectively communicate with her mother than with a forensic interviewer or a judge, the trial court in this case did not actually witness S.S.'s ability to communicate with her mother. Rather, the trial court's determination was based solely on S.S.'s mother's assertion that such communication was possible.

12

reasonable doubt. **State v. Harris**, 97-0300 (La. 4/14/98), 711 So.2d 266, 269. The test for determining whether an error is harmless is whether the verdict actually rendered in this case was surely unattributable to the error. **Sullivan v. Louisiana**, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993); **State v. Burton**, 2019-01079 (La. 6/30/21), 320 So.3d 1117, 1123; **State v. Cowart**; 2022-1318 (La. App. 1st Cir. 6/2/23), 369 So.3d 887, 890. Factors to be considered include the importance of the evidence to the State's case, the presence or absence of additional corroboration of the evidence, and the overall strength of the State's case. **Harris**, 711 So.2d at 269.

Considering this standard, we are convinced that the erroneously admitted statement surely did not contribute to the verdict in this case, as the evidence against the defendant was overwhelming. The defendant's wife, M.M., personally witnessed the defendant sexually abusing S.S. and testified as to what she observed. S.S.'s brother, D.S., testified at trial as well and corroborated the sequence of events set forth by M.M. D.S. confirmed that on the day of the incident, S.S. and the defendant were upstairs when M.M. arrived home. D.S. recounted that after M.M. went upstairs, she began yelling. Thereafter, she returned downstairs and ordered the children to put on their shoes and get in the car, and that she seemed upset and sad. Moreover, M.M.'s 911 call, in which she can be heard tearfully explaining what she witnessed, was played for the jury, as were the videos of M.M. and the defendant immediately following the incident in which the defendant can be heard saying "I don't know what the f*** I was thinking[,]" and "Wow, I just threw my whole f***ing life away[.]" And finally, the jury was shown the defendant's text messages to M.M. in which he apologized for the pain he caused and asked to hug their son one last time. Thus, given M.M.'s eye-witness testimony and the defendant's own statements immediately following

13

the incident, the verdict was surely unattributable to the admission of S.S.'s statement, and any error in the admission of this evidence was harmless.

This assignment of error is without merit.

**CONVICTIONS AND SENTENCES AFFIRMED.**